**DECLARATION IN SUPPORT OF VERIFIED COMPLAINT**

Under 28 U.S.C. § 1746, I, Task Force Officer ("TFO") James Nix, Drug Enforcement Administration ("DEA"), United States Department of Justice, make the following unsworn declaration, under the penalty of perjury, pertinent to the Verified Complaint to which this Declaration is attached:

I.  **INTRODUCTION**

1. This declaration is made in support of a Verified Civil Complaint for forfeiture of property seized pursuant to a state search warrant. There is probable cause to believe that the property is involved in and/or represents the proceeds of drug trafficking and/or a conspiracy to commit drug trafficking, in violation of 21 U.S.C. §§ 841 and 846 and is therefore subject to forfeiture under 21 U.S.C. § 881(a).

2. This declaration is based upon my personal knowledge and experience obtained as a TFO, information I have received from other law enforcement officials, laboratory testing, and analysis of evidence obtained during this investigation.

3. Unless otherwise noted, wherever in this declaration I assert that a statement was made, the information was provided by others with whom I have spoken or whose report I have reviewed. Such statements are not reported in their entirety or verbatim, unless otherwise indicated.

4. Because this declaration is being submitted for the limited purpose of establishing my reasonable belief that the United States will be able to meet its burden of proof that the Defendant Property is the proceeds of drug trafficking and/or involved in money laundering, I have not set forth every fact learned during the investigation, nor is this declaration intended to be a complete and detailed description of all events and conversations occurring during the


EXHIBIT A

course of the investigation.

## II. DECLARANT'S BACKGROUND AND EXPERIENCE

5. I am a DEA TFO assigned to the Gulf Coast High Intensity Drug Trafficking Area Task Force. The DEA Task Force in Gulfport, Mississippi, is made up of Special Agents from the DEA and Homeland Security Investigations ("HSI"), Agents from the Mississippi Bureau of Narcotics ("MBN"), and detectives from the police departments of Biloxi, Harrison County, Jackson County, and Gulfport. I previously served as a DEA TFO from October 2020 to October 2022 and rejoined in April 2024. My parent agency is the Gulfport Police Department where I have been employed as a law enforcement officer since June 30, 2003. I currently hold the rank of Detective Sergeant in the Gulfport Police Narcotics Division.

6. My primary duty as a DEA TFO is to investigate organized narcotics traffickers. During multiple investigations, I have conducted or assisted in preparing, obtaining, and executing numerous search, seizure, and arrest warrants, conducted surveillance, and participated in Title III investigations. I am a graduate of the Southern Regional Public Safety Institute and have received training from the Regional Counter Drug Training Academy and other local and state sponsored training sessions, which have encompassed all facets of narcotics enforcement including the field of detection and methods used by drug violators to facilitate their criminal activities. I continually work with confidential informants throughout the Mississippi Gulf Coast Area. Many of my investigations led to the arrest and prosecution of drug traffickers.

7. Since my employment as a DEA TFO, I have participated in debriefing dozens of defendants, informants, and witnesses who had personal knowledge about narcotics, narcotics trafficking, and methods of narcotics distribution and I have directed investigations of various illegal drug traffickers and their organizations. These investigations involved complex

**EXHIBIT A**

conspirators, in which numerous drug traffickers, located in various states and foreign countries, were illegally importing, possessing, and distributing illegal drugs within the United States.

8.  Through training and experience, and through the training and experience of other narcotics agents with whom I have talked, I have learned the following as it relates to this investigation:

   a. That drug traffickers maintain and handle large amounts of United States currency to finance their ongoing illicit businesses;

   b. That it is common practice for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in locations within their residences, vehicles, and/or place of business to conceal them from law enforcement authorities;

   c. That persons involved in large-scale drug trafficking conceal in their residences, vehicles and businesses caches of drugs, large amounts of currency, and evidence of financial transactions relating to the obtaining and secreting of large sums of money acquired from engaging in narcotics-trafficking activities;

   d. That it is a common practice for large-scale drug traffickers to travel to distribution areas to facilitate their trafficking; that after purchasing drugs, the drug trafficker will transport, or cause to be transported, drugs to other areas for distribution; and that the methods of transportation include, but are not limited to, rental and private automobiles;

   e. When multiple types and large quantities of narcotics are in close proximity with U.S. Currency, the currency is—more likely than not—the proceeds of a drug trafficking crime or intended to be used in conjunction of a drug trafficking crime;

   f. That those with illegally obtained proceeds often attempt to justify their possession of bulk currency by claiming that the currency is the proceeds of legal cash-based self-employment or the proceeds of gambling. Such individuals are often unable to substantiate their claims with business records; and

   g. That the Courts have recognized unexplained wealth is probative evidence of criminal violations by pecuniary gain, in particular


EXHIBIT A

      trafficking in controlled dangerous substances (*see United States v. Barnes*, 604 F.2d 121, 147 (2nd Cir. 1979)).

### III. ITEMS TO BE FORFEITED TO THE UNITED STATES OF AMERICA

9. The Defendant Property sought for forfeiture includes:

| Asset ID # | Property Description |
| --- | --- |
| 21-DEA-683321 | $11,200.00 U.S. Currency seized on September 15, 2021, from April Conaway and Frank Fradella pursuant to a state search warrant at 200 East Beach Boulevard, Room #2209, Gulfport, Mississippi |

### III. FACTS AND CIRCUMSTANCES

10. On September 9, 2021, United States Marshals Service ("USMS") task force officers from New Orleans, Louisiana—having received a tip from Crime Stoppers that April Conaway ("Conaway") and Frank Joseph Fradella III ("Fradella"), who were both wanted for aggravated assault charges stemming from a September 2, 2021, shooting in New Orleans were staying at a Ramada Inn in Diamondhead, Mississippi—requested assistance from the USMS's Gulf Coast Regional Fugitive Task Force in Gulfport, Mississippi.

11. On September 10, 2021, officers met with management at the Ramada Inn, who confirmed that the room that Conaway and Fradella were allegedly staying in was reserved under the name of Dana Whitmore ("Whitmore") and that the guests were scheduled to checkout within a few hours.

12. Officers discovered that Whitmore is married to Allen Cazabon ("Cazabon"), Fradella's cousin. Witnesses confirmed that Conaway and Fradella were staying with two other individuals (presumably, Whitmore and Cazabon) but had left a few hours earlier, one couple in a black Mustang with Texas plates and one couple in a silver Camaro with Arkansas plates. Officers searched the hotel room but found no individuals or guests' property in the room. Officers believed Conaway and Fradella may have traveled to Gulfport.



13. On September 15, 2021, officers discovered that Conaway and Fradella may be residing at a hotel on Beach Boulevard in Gulfport and located a black Mustang with Texas plates parked behind the Grand Centennial Hotel. Officers initiated surveillance and observed a man and a woman leaving in the black Mustang and followed the vehicle to the Star Inn in Biloxi, Mississippi.

14. Officers stopped the black Mustang as it parked in the Star Inn's lot, identifying the passengers as Conaway—who had a small amount of illegal narcotics on her person—and Fradella, and arresting both on the fugitive warrants. Conaway claimed that they had been staying at the Grand Centennial Hotel but had checked out and were now staying at the Star Inn. Officers then discovered that Conaway and Fradella had reserved two rooms at the Star Inn for multiple nights, and that a silver Camaro with Arkansas plates was parked in front of one of the rooms reserved by Conaway and Fradella. Believing that Whitmore and Cazabon might be in that room, officers knocked on the door, which Cazabon answered. Whitmore and a child were also present.

15. Officers explained that Conaway and Fradella were being taken into custody and, observing scales in plain sight, asked whether there were any illegal narcotics in the room. Cazabon consented to a search of the hotel room.

16. Officers asked Whitmore why Conaway and Fradella had two hotel rooms at the Star Inn and a room at the Grand Centennial Hotel, but Whitmore claimed she did not know. When officers asked if there were illegal narcotics in the other hotel room, Whitmore appeared to become very nervous and shut down. After being asked multiple times, Whitmore stated that if there were illegal drugs, they would be under the bed.

**EXHIBIT A**

17. Narcotics officers from the Biloxi Police Department responded to the Star Inn and obtained a search warrant for the black Mustang and the hotel room that Conaway and Fradella were staying in.  During the search, officers found a bag containing 113 grams of pure Fentanyl (constituting 56,500 lethal doses) and approximately 2,900 pills containing Fentanyl.  Based on this discovery, the Biloxi Police Department arrested Conaway and Fradella on charges of Aggravated Drug Trafficking in addition to the charges Conaway and Fradella were facing.

18. SA Gary Colby along with several Biloxi PD Investigators conducted an interview with Fradella at Biloxi Police Department and while under *Miranda*, Fradella stated that he had about $9,000 in cash at the hotel room at the Centennial Plaza, which he stated was from a cashed paycheck from his employment at Warren Refinishing.  Fradella stated that he cashed the check prior to travelling to Mississippi.  Fradella stated that for the past 6 to 9 months, he had been receiving bulk methamphetamine, fentanyl, and counterfeit Oxycodone 30mg from a source of supply who Fradella only knew as "Sinaloa," and who Fradella stated was currently incarcerated.  Fradella stated he has been working with the Cartel for approximately 9 months.  Fradella stated that he had just ordered up a shipment of 3,500 counterfeit Oxycodone 30mg.  He stated that he paid $5.00 per tablet, and sold them for $10.00 per tablet, and typically sold 10 to 15 pressed tablets at a time. Fradella stated that he believes he has made approximately $100,000.00 in from the sale of illegal drugs over the past 6 months.

19. Officers then traveled to the Grand Centennial Hotel to determine whether Conaway and Fradella had checked out of their previous hotel room.  Management told officers that both Conaway and Fradella were staying at the hotel and had two more nights reserved.  When officers informed management that Conaway and Fradella would not be returning,



management asked the officers to accompany them to the room to make sure it was empty. The room was vacant, but an overwhelming smell of marijuana was emanating from the room.

20. Narcotics officers from Gulfport Police Department obtained a search warrant for the room. Upon executing the search warrant, officers recovered approximately 15 grams of marijuana, 2 Clonazepam pills, approximately 4.73 grams of an unknown powder, 40 phentermine hydrochloride pills (a weight loss drug requiring a prescription), 4 Oxycodone pills, 17 unknown white pills, 20 unknown white pills, and $11,200.00 U.S. Currency were confiscated from an unlocked hotel room safe, which had been accessible to both Fradella and Conaway. Based on these findings, Gulfport Police Department officers added suspicion of drug possession to the charges that Conaway and Fradella were facing.

21. Neither Conaway nor Fradella were interviewed by the Gulfport Police Department after being arrested in Biloxi, Mississippi. Conaway and Fradella were transported to Harrison County Sheriff's Office for booking purposes on their Fugitive Warrants. Neither Fradella or Conaway were formally charged by the Biloxi or Gulfport Police Departments since they were wanted in Louisiana.

22. On September 20, 2021, DEA TFO Amber Gaspard and I transported the currency to First Bank in Gulfport, Mississippi for an official count totaling $11,200.00 U.S. Currency.

23. No firearms or additional narcotics (other than that referenced above) were seized in connection with this investigation. Mississippi civilly forfeited $1,209.00 U.S. Currency seized from Fradella and Conway in the Circuit Court for the Second Judicial District of Mississippi (*State of MS ex rel BPD v. Fradella, et al.*, A2402-2021-152).

**EXHIBIT A**

24. On or about November 9, 2021, the DEA notified Conaway and Fradella that it intended to forfeit the $11,200.00 U.S. Currency via administrative forfeiture. However, the direct notice process was complicated by COVID and DEA re-sent notice on or about June 5, 2024. Conaway filed an administrative claim with the DEA on June 11, 2024, alleging that "[there were no drug that were being used in my room, and there were no drugs being sold out of my room]" and that she had been staying at the hotel after being evacuated from a hurricane. The DEA then referred the claim to the U.S. Attorney's Office for judicial forfeiture proceedings.

25. On October 31, 2024, the Crime Lab report returned to the Gulfport Police Department which indicated the four Oxycodone pills seized from the Grand Centennial Hotel room were Fentanyl.

26. On July 12, 2024, I called the New Orleans Fourth District Courts and was advised that Conaway's charges of Accessory After the Fact and Obstruction of Justice were dismissed on May 9, 2024.

27. I reasonably believe, based on the above-listed facts and circumstances, that there was probable cause to seize the Defendant Property and that the United States will meet its burden of proof to forfeit the Defendant Property. I reasonably believe that the money was intended to facilitate or used to further a drug crime or is directly related to drug proceeds of Conaway and Fradella or their associates, in violation of 21 U.S.C. § 841 (drug trafficking) and § 846 (drug conspiracy) and is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a).

**EXHIBIT A**

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this 16th day of July 2024,

_____
James E. Nix
Task Force Officer
Drug Enforcement Administration

**EXHIBIT A**